IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRISTA OETTLE, individually and on behalf of all others similarly situated,<br><br>         Plaintiff,<br><br>v.<br><br>WAL-MART, INC., et al.,<br><br>         Defendants. | No. 3:20-CV-455-DWD |

## MOTION AND MEMORANDUM FOR CLASS CERTIFICATION

COMES NOW, Plaintiff Trista Oettle, individually and on behalf of all others similarly situated, by and through her attorneys, and moving this Court for an Order certifying this action as a class action, appointing herself as class representatives, and Maag Law Firm, LLC, as class counsel. In support thereof:

## STATEMENT OF FACTS

Walmart, Inc. ("Defendant"), is a Delaware corporation with a principal place of business in Arkansas, selling a "Balloon Time 9.5" Helium Tank" ("product"). (Doc.1-2,p.13 / Doc.11,pp.1-3; Exhibit 1: Betty Cash Dep.,pp.4, 7-8; Doc.67, p.2). Worthington Cylinder Corporation is an Ohio corporation with its principal place of business located in Ohio. (Doc.67,p.2). Trista Oettle ("Plaintiff") is an Illinois citizen and resident. (Doc.50-1,pp.59; Doc.67,p.2). The First Amended Complaint[1] in this case alleges Defendant breached the Implied Warranty of Merchantability (810 ILCS 5/2-314) and the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301-2312), with the alleged breaches denied by

---

[1] The Implied Warranty of Merchantability and Magnusson Moss Warranty Act counts are essentially identical in both the Complaint and First Amended Complaint, and there may be cross references given their similarity and that an Answer has yet to be filed on the First Amended Complaint.

Defendant.  Doc.1-2, pp.13-21; (Doc.11,pp.10); Doc.67,pp.1-9.  In pertinent part, the First Amended Complaint alleges the product is not of merchantable quality or fit for its intended purpose of keeping helium balloons inflated for a sufficiently long period of time, and, thus, has a propensity to deteriorate and fail its essential purpose, namely that the product contains only 80% helium and balloons tend to either not float or sink to the ground after a handful of hours.  (Doc.1-2, pp.13-14; Doc.67,p.7)  Walmart, Inc. denies these allegations.  (Doc.11, pp.10).  Plaintiff testified she notified Walmart, Inc. of her dissatisfaction with the product pre-filing.  Walmart, Inc. could not find a record of receiving Plaintiff's pre-filing notice.  (Exhibit 1: Betty Cash Dep.,pp.25-26; Trista Oettle Dep.pp.109 – Doc.50-1,pp.50).  On at least one occasion where Plaintiff purchased the product from Walmart, Inc., she went straight to a park and used the product after purchasing it.  (Trista Oettle Dep.pp.37-38 – Doc.50-1,pp.11-12)

Plaintiff testified she purchased the product from Walmart, Inc. on three occasions from the Carlyle, Illinois Walmart for approximately $23.88 each.  (Doc.50-1,pp.58 – Trista Oettle Interrogatory Response No.1).  Plaintiff testified she paid, for example, $19.88 on March 31, 2018 at Walmart for the product.  (Doc.50-1,pp.9-10 – Trista Oettle Dep.,pp.34,36).  The product box indicated that the float time for balloons would be 5-7 hours.  (Doc.50-1,pp.53,71 – Trista Oettle Dep.,pp.112 and Exhibit 10; Exhibit 2: John Waizmann Dep.,pp.16-17; Exhibit 1: Betty Cash Dep.,pp.5-6 and Exhibit 1).  In Plaintiff's experience with the product, she testified that none of the balloons using the product on the three occasions, stayed afloat more than two hours.  (Doc.50-1,pp.54-55 – Trista Oettle Dep.,116-117).  The product was to be used for birthday parties of the Plaintiff's children.  (Doc.50-1,pp.3,6 – Trista Oettle Dep.,7,11).  For reasons related to float time

performance, Plaintiff testified this was a reason she was dissatisfied with the product and that she believed Walmart, Inc. breached its promise to sell a merchantable product. (Doc.50-1,pp.20-21 – Trista Oettle Dep.pp.20-21).

The product is manufactured by Worthington Cylinder Corp. (Exhibit 2: John Waizmann Dep.,pp.5,12). Worthington Cylinder Corp. sells the product in the State of Illinois through retailers, including Walmart, Inc., as opposed to direct-to-consumer sales. (Exhibit 2: John Waizman Dep.,pp.14-15). The product manufacturer was not aware of any warranty disclaimers for the product, nor of anything different on the box in the preceding four years. (Exhibit 2: John Waizmann Dep.,pp.17-19). Worthington Cylinder Corp., as to float time performance, was not aware of other lawsuits related to its product. (Exhhibit 2: John Waizmann Dep.,pp.29). The product cylinder "contains a mixture of helium and air with not less than 80 percent helium." (Exhibit 2: John Waizmann Dep.,pp.24-25). As more air is mixed with helium, there will be a degradation of float time. (Exhibit 2: John Waizman Dep.,pp.56). Internal testing by Worthington Cylinder Corp. showed that on a 15% air mixture on one test, that float time was "right around the five-hour mark." (Exhibit 2: John Waizmann Dep.,pp.65). It was unclear if the underlying data points for the the aforementioned test still existed. (Exhibit 2: John Waizmann Dep.,pp.65). In discussing data points in relation to the Worthington Cylinder Corp. graphs, it was conceded that, at least in discussing one graph, that a graph depicting float time in hours was an average of many balloons' float times. (Exhibit 2: John Waizmann Dep.,pp.50-51). The manufacturer, Worthington Cylinder Corp., did not take into consideration with its testing of float time factors such as wind or breeze or a force causing a balloon to sway such as by a child holding a balloon while walking around with it.

(Exhibit 2: John Waizmann Dep.,pp.72-73). No testing was done by the manufacturer specific to nozzle output off the product tank that the first balloon to get inflated has the same output as the thirtieth balloon on, for example, an 85/15 tank mixture. (Exhibit 2: John Waizmann Dep.,pp.58).

Plaintiff moves to certify the following class and herself as class representative, and Maag Law Firm, LLC, as class counsel:

> Class A - Implied Warranty of Merchantability - Illinois Class – Walmart, Inc.
>
> All citizens and residents of Illinois that purchased the product from Walmart, Inc. within four years of the filing of this action, until final judgment.
>
> Class B - Magnuson-Moss Warranty Act - Illinois Class – Walmart, Inc.
>
> All citizens and residents of Illinois that purchased the product from Walmart, Inc. within four years of the filing of this action, until final judgment.
>
> Class C - Illinois Consumer Fraud and Deceptive Business Practices Act - Illinois Class – Worthington Cylinder Corporation
> All persons that purchased the product within three years of the filing of this action, until final judgment, at an Illinois Walmart store or online to an Illinois mailing address.

Excluded from the Class are members of the judiciary, Defendants, and any entity in which they have a controlling interest, including officers and directors and the members of its immediate corporate family and Plaintiff's counsel. (Doc.1-2,pp.16; Doc.67,p.4)

<u>ARGUMENT</u>

Class certification in this case is governed by Federal Rule of Civil Procedure 23, which provides, in pertinent part:

    (a) Prerequisites.  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
    (1) The class is so numerous that joinder of all members is impracticable;
    (2) There are questions of law or fact common to the class;
    (3) The claims or defenses of the representative party are typical of the claims or defenses of the class; and
    (4) The parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

    (1) prosecuting separate actions by or against individual class members would create a risk of:

        (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

        (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

    (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

    (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

        (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

        (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

        (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

        (D) the likely difficulties in managing a class action.

Broad discretion is granted to the District Court to determine whether class certification is appropriate.  *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir.2008).  "To obtain class certification, a plaintiff must satisfy the requirements of Fed.R.Civ.P. 23(a) and fall within

at least one of the categories identified in Rule 23(b)." *Id.* Plaintiff will address each of the elements, each of which is met in this case.

A. Numerosity

Touching upon the numerosity element, the plaintiffs must show that joinder of all members is impracticable given their numerosity. Fed.R.Civ.P.23(a). A 40-member class is often regarded as sufficient to meet the numerosity requirement. *Orr v. Shicker*, 953 F.3d 490, 498 (7th Cir.2020). The plaintiff is not required to specify the exact number of persons in the class. *Vergara v. Hampton*, 581 F.2d 1281, 1284 (7th Cir.1978). The impracticability of a joinder must be determined in the context of the particular litigation, because there is no magic number that clearly defines numerosity. 1 Newberg on Class Actions §3:3, at 225. Impracticability requires an analysis of "the nature of the action, the size of the individual claims, and the location of the members of the class or the property that is the subject matter of the dispute." 7A C. WRIGHT & A. MILLER, Federal Practice & Procedure, § 1762 (3d ed.). Here, Walmart, Inc. is alleged to sell helium tanks, opined to be in excess of 800 members, even when confining the results to Walmart.com for those with similar negative experiences as Plaintiff. (Doc.1-2,pp.13-14; Doc.67,p.5; Exhibit 3: Matt Grawitch Expert Report,pp.5.) Likewise, it was opined that, "[a]t the low end, … as few as 5% of consumers" found the product labeling an important motivator, when discussing country of manufacture. (Exhibit 3: Matt Grawitch Expert Report, p.7-8). In this case, Walmart, Inc. and its subsidiaries sold more than $4,000,000, excluding taxes and shipping, and 182,000 units between February 26, 2016 and February 26, 2020, including 4,168 units sold on Walmart.com of the Worthington Cylinder Corporation product. Doc.1-4,p.1; Doc.13-1,pp.3. In its Notice of Removal, Walmart, Inc. argued, in

part, that "[h]owever, the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs, as set out below." (Doc.1p.3). On Walmart.com, language indicating "verified purchaser" "means that a customer has made a purchase." (Exhibit 1: Betty Cash Dep.,pp.35). The Answer admits there are "numerous Balloon Time Helium Tank product purchasers in Illinois." (Doc.11,p.7). In this case, the product was sold across the State of Illinois on Walmart.com and at brick-and-mortar stores, involving a product costing less than $50, and is opined to involve more than 800 members. (Doc.1-4,p.1; Doc.13-1,pp.3; Doc.50-1,pp.9-10 – Trista Oettle Dep.,pp.34,36; Exhibit 3: Matthew Grawitch Expert Report,pp.5). For the foregoing reasons, given the statewide nature of this case and the volume of class members, joinder is impracticable.

B.   Common Questions of Law and Fact / Rule 23(b)

"Commonality" requires that there be questions of fact or law common to the class that predominate over other questions affecting only individual class members. A single issue common to all members of the class will satisfy the requirement if it predominates. 1 Newberg on Class Actions §3:10, at 273-74; 5 Newberg on Class Actions §17:10, at 321. Commonality focuses on whether the class members' grievances derive from a "common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1017-1018 (7th Cir.1992). Such a common nucleus exists where "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir.1998). Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members and if it is based on the same legal theory. 1 Newberg on Class Actions §3:15, at 335-56. Commonality requires the plaintiff to demonstrate that

the class members have suffered the same injury at the hands of the same defendant. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).

There are questions of law and fact that are common to the class, including *inter alia*:

(a)   Whether Walmart, Inc.'s product was not merchantable;

(b)   What is the appropriate measure of damages for Walmart, Inc.'s sale of the unmerchantable product?

(c) Whether Defendant Worthington Cylinder Corporation's representation of "Made in the USA with global components" is a false statement of material fact in light of balloons contained in the kit being labeled as "Balloons made in Malaysia."

Doc.67, p.5

The Implied Warranty of Merchantability (810 ILCS 5/2-314) provides, for example, that unless disclaimed or modified, a merchant selling goods warrants that the goods are of "fair average quality within the description" and be "adequately contained, packaged and labeled as the agreement may require." The elements include a merchant with respect to goods of the kind, that was not merchantable at the time of sale, a sale, the buyer provided notice of defect, and an economic loss occurred. 810 ILCS 5/2-314. Trista Oettle has alleged all of the foregoing. (Doc.1-2pp.13-21; Doc.67,p.3, 7-8). The Magnusson-Moss Warranty Act provides a private right of action to any consumer who is damaged by the failure of a supplier or warrantor to comply with any obligation under an implied warranty. 15 U.S.C. § 2310(d)(1). In *In re 100% Grated Parmasean Cheese Mktg. & Sales Practices Litig.*, 348 F.Supp.3d 797, 815 (N.D.Ill.2018), the District Court held 810 ILCS 5/2-314 permitted a plaintiff alleging solely a misrepresentation on a product label to pursue an implied warranty claim. In this case, various "verified

purchasers" on Walmart.com reviewed the product, stating that they experienced that the balloons did not float for a five-hour time period, as Trista Oettle also testified was her experience.    (Trista Oettle Dep.,pp.116-117 – Doc.50-1,pp.54-55; Exhibit 3: Matt Grawitch Expert Report,pp.3-5.)  On Walmart.com, a person could look up the product and click on 1 star, 2 star, 3 star, 4 star, and 5 star reviews.  (Betty Cash Dep.,pp.37).  The product box states that balloons will remain inflated for 5-7 hours.  (Doc.50-1,pp.53,71 - Trista Oettle Dep., pp.112 and Exhibit 10).  The purchasing public would have seen the box label, labeled as Exhibit 10, in the 4 years preceding this lawsuit, as best Worthington Cylinder Co. could recall.  (Exhibit 2: John Waizmann Dep.,pp.19-20; Exhibit 1: Betty Cash Dep.,pp.5-6).  A common question of law and fact is the merchantability of the product given the negative reviews of "verified purchasers" and their balloon float performance, as it compares to the uniform product labeling and advertised performance standards.  Matthew Grawitch, as referenced earlier, opined that class members affected are in the range of more than 800 members, even when focusing only on Walmart.com sales.  (Exhibit 3: Matthew Grawitch Expert Report,pp.3-5). Furthermore, a common question of law or fact would be whether the language "Made in the USA with global components" on the exterior of the box would be a false statement of material fact when contrasted with the balloon packaging that states "Balloons made in Malaysia."  (Doc.67,5,10).

       Damages for a breach of the Implied Warranty of Merchantability are governed by 810 ILCS 5/2-714 of the Uniform Commercial Code ("U.C.C.").  The usual measure of damages is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as

warranted." 810 ILCS 5/2-714(2). Incidental damages are recoverable if the loss would be foreseeable at the time of contracting. 810 ILCS 5/2-715(2)(b). The Magnuson-Moss Warranty Act provides similarly (15 U.S.C. § 2310(d)(1)-(2)) provides a consumer who is damaged by the failure of a supplier to comply with an implied warranty may bring suit "for damages and other legal and equitable relief", as well as reasonable costs and expenses, including attorney's fees, if the consumer prevails. Finally, 815 ILCS 505/10a ("ICFA") requires a plaintiff sustain actual damages. *Kim v. Caters, Inc.*, 598 F.3d 362, 365 (7th Cir.2010). In *Biffar v. Pinnacel Foods Group, LLC*, 16-0873-DRH, *8-9 (S.D.Ill.Dec.22, 2016), this Court held sufficient an ICFA damage model of the difference between what was paid and what a consumer would have paid had they known the truth of the labeling. In this case, Plaintiff testified that for her consumer expectation damages she wanted "half of what my tank was worth because they floated half the time." (Doc.50-1,p.52 – Trista Oettle Dep., pp.111). The First Amended Complaint further seeks costs of suit and attorney's fees. (Doc.1-2,pp.20-21; Doc.67,p.8-9,11) Damages in this case would be based on a common question of law, namely under the U.C.C., Magnuson-Moss Warranty Act, ICFA, the lost consumer expectation damages, as discussed by Plaintiff and Matthew Grawitch, plus costs and attorney's fees.

Related to the common question of law or fact, Rule 23(b)(3)'s predominance requirement is "met where…there is a showing of predominance of common questions at the liability stage of the litigation, rather than at the damages stage." *In re Natural Gas Commodities Litig.*, 231 F.R.D. 171, 180-181 (S.D.N.Y.2005). In this case, the representations of product performance on the box for all class members, when balanced that a class action is a superior method of adjudication of this matter due to no known

other lawsuits related to float time performance, the small individual dollar amounts at issue for litigating any such possible claims individually, and the manageability of, as currently pending, a single state, single defendant class action applying only Illinois or uniform federal law. Superiority can be proven by factoring in small amounts being litigated individually, that would otherwise be expensive, on a geographically dispersed class. *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 568 (N.D.Ill.2004). Along those lines, there is the risk that if other class members did individually litigate the issues sought to be certified, there is the risk of inconsistent or varying adjudications that would pose incompatible standards of conduct for Walmart, Inc. and Worhtington Cylinder Corporation.

  C. Typicality

Pursuant to Federal Rule of Civil Procedure 23(a)(3), typicality is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." *See also De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983). A named representative's claim is typical where "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members" and is "based on the same legal theory." *Retired Chicago Police Ass'n v.* 7 F.3d 584, 596-97 (7th Cir.1993). "Typical does not mean identical and the typicality requirement is liberally construed." *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 566 (N.D.Ill.2004). The fact some proposed class members might be "satisfied" with a defendant's product, whereas others are not, does not by itself defeat typicality. It could be that the "satisfied" proposed class members merely suffered less injury. *Roario*, 963 F.2d at 1018. In this case, the claim of Plaintiff is typical of verified purchasers that similarly complained of float time

performance that differed from that is what was labeled on the product box during the class period, or the accuracy of the labeling generally, and as discussed by Matthew Grawitch in his analysis of verified purchasers' negative reviews of float time performance or how labeling of where the product is manufactured can affect consumer behavior. Typicality has been satisfied.

### D..    Adequacy of Representation

The test applied to determine adequacy of representation is whether the "parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P.23(a)(4). The attorney for the representative party must be qualified, experienced and generally able to conduct the proposed litigation. Additionally, plaintiff's interest must not conflict with the class in the litigation at hand. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975)

In this case, Plaintiff can and will fairly and adequately represent and protect the interests of the Class for the reasons enumerated herein. First, the claims of Plaintiff are substantially similar, if not identical to, those of absent Class members, as discussed previously. Second, there are questions of law or fact that are common to the Class and that overwhelmingly predominate over any individual issues, such that by prevailing on their own claims, Plaintiff will necessarily establish Defendants' liability as to all Class members. In addition, without the Class representation provided by Plaintiff, virtually no Class members will receive legal representation or redress for their injuries; and, in fact, no prior case has been filed against Worthington Cylinder Corp. in regards to float time performance. (Exhibit 2: John Waizmann Dep.,pp.29).

Plaintiff and his counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and Class counsel are aware of their

fiduciary responsibilities to Class members and are determined diligently to discharge those duties by vigorously seeking the maximum possible recovery for the Class. (Doc.67,pp.5-6). In pertinent part, Plaintiff's Counsel has been appointed adequate class counsel to pursue statewide class actions.  Attached is a Final Approval Order in a case signed by now Supreme Court Justice Overstreet, and another more recent Illinois statewide class action that was preliminarily approved.  (Exhibits 4 and 5; Exhibit 6: Affidavit of Peter Maag & Resume)

## CONCLUSION

WHEREFORE, for the foregoing reasons, and those other reasons that Trista Oettle may make of record, she moves this Court for an order certifying this action as a class action, appointing herself as class representative, and Maag Law Firm, LLC, as class counsel, directing that the parties submit a proposal for class notice and to set this matter for trial, plus such other further and different relief as is allowed by law or equity.

DATED:  March 12, 2022                                        Respectfully submitted,

                                                              Trista Oettle,
                                                               Class Plaintiff,

                                                              By: /s/ Peter J. Maag
                                                                    One of Her Attorneys

                                                            Peter J. Maag #6286765
                                                            Maag Law Firm, LLC
                                                            22 West Lorena Avenue
                                                            Wood River, IL 62095
                                                            Telephone:  (618) 216-5291
                                                           Facsimile: (618) 551-0421
                                                           lawmaag@gmail.com

## PROOF OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing was served by the CM/ECF system on March 12, 2022 to all counsel of record.

                                                 /s/ Peter J. Maag