IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRISTA OETTLE, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>vs.<br><br>WALMART, INC., and<br>WORTHINGTON CYLINDER CORP.,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)  Case No. 3:20-cv-455-DWD<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM & ORDER**

**DUGAN, District Judge:**

In 2018, Plaintiff Trista Oettle ("Oettle") purchased four Balloon Time helium tank kits on three separate occasions (March 31, 2018, May 26, 2018, and July 24, 2018). On February 26, 2020, she filed a putative class action in Illinois state court against Walmart, Inc. ("Walmart"), claiming she was damaged because the kits failed to keep balloons afloat for a "sufficiently long period of time." Walmart removed the case to this Court, asserting jurisdiction under the Class Action Fairness Act ("CAFA"). On January 18, 2022, Oettle filed an amended complaint (Doc. 67) bringing breach of warranty claims against Walmart (Counts I-II, IV) and a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/1) ("ICFA") against newly added defendant Worthington Cylinder Corporation ("Worthington") (Count III). As to the claim against Worthington, Oettle alleges she was damaged by the statement "Made in the USA with global components," with an American Flag printed on the product box, when the balloons were made in Malaysia.

Presently before the Court is Defendants' Motion to Dismiss the First Amended Complaint (Doc. 71). Oettle has filed a response (Doc. 73), and Defendants have filed a reply (Doc. 75). For the reasons set forth below, the Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**.

## I. BACKGROUND

This case is about Balloon Time Helium Tank kits. The kits, which are manufactured by Worthington and sold by Walmart, include a helium tank, packaged balloons, and ribbon (hereinafter, "BT Kits" or "the product"). Oettle purchased the product on three occasions, May 26, 2018, March 31, 2018, and July 24, 2018. As to her warranty claims, Oettle alleges the BT Kits are not of merchantable quality because they contain only 80% helium and, as a result, the balloons do not stay "inflated for a sufficiently long period of time." Instead, they "tend to either not float or sink to the ground after a couple of hours."

Oettle's ICFA claim, directed against Worthington, relates to the product's allegedly deceptive labeling. The product was sold in a cardboard box that includes the claim "Made in the USA with global components" beneath a depiction of the American flag. The label on the package of balloons inside the box states: "Balloons made in Malaysia." Oettle contends that the label "Made in the USA with global components," combined with a depiction of the American flag, is misleading because a component of the product, the balloons, was not made in the United States. Oettle claims that "she would have paid less for the product had she known that all of the component parts, such as the balloons, were not 'Made in the USA with global components' as the exterior of the

product box represents to consumers."

## II. MOTION TO DISMISS STANDARD

To survive a motion to dismiss brought pursuant to Rule 12(b)(6), a complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. P. 8(a)(2)). The court will accept all well-pleaded allegations as true. *Iqbal*, 556 U.S. at 678. However, the court will not accept legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 677–78). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Arnett*, 658 F.3d at 751–52 (internal quotations and citation omitted).

## III. ANALYSIS

**A.  Revocation of Acceptance (Count IV)**

Defendants contend that Oettle's revocation of acceptance claim (Count IV) must be dismissed because she failed to revoke in a reasonable time. Alternatively, Defendants

argue the claim is subject to dismissal because Oettle used the BT Kits, amounting to a substantial change in the condition of the goods. *See* 801 ILCS 5/2-608(2) (revocation of acceptance must occur "before any substantial change in condition of the goods which is not caused by their own defects.").

In responding to Defendants' Motion to Dismiss, Oettle concedes that this claim is barred given the substantial change in the BT Kits. The Court agrees. The purpose of revocation is "to cancel the sale and return the parties to *status quo ante*." *Smith v. Monaco Coach Corp.,* 334 F.Supp.2d 1065, 1070 (N.D. Ill. 2004). *See also* J.F. Daley Int'l, Ltd. v. Midwest Container & Indus. Supply Co., 849 S.W.2d 260 (Mo. App. Ct. 1993) ("the purpose of conditioning the right to revoke acceptance on the absence of substantial change in the condition of goods is to prevent the buyer from tendering back to the seller goods which have materially deteriorated for reasons other than the defects for which the seller is responsible."). Because Oettle used the BT Kits, she cannot pursue a claim for revocation of acceptance. *See e.g., Toyomenka (America), Inc. v. Combined Metals Corp.,* 487 N.E.2d 1172 (Ill. App. Ct. 1985) (acceptance of defective steel could not be revoked after steel used to build bridge, but buyer could sue for breach of warranty).

Accordingly, Count IV is **DISMISSED** with prejudice.

**B.      Warranty Claims (Counts I and II)**

Defendants contend Oettle's Breach of Implied Warranty of Merchantability (Count I) and Magnuson Moss Warranty Act (Count II) claims must be dismissed for failure to provide timely notice.

Under Illinois law, a buyer who discovers a breach of warranty must notify the

seller "or be barred from any remedy." 810 ILCS 5/2-607(3)(a). The requirement of pre-suit notice is intended to encourage settlement, cure defects, and minimize damages. *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996); *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1025 (Ill. App. Ct. 1998); U.C.C. § 2–607 cmt. 4. Notice must be made "within a reasonable time after [the buyer] discovers or should have discovered any breach." U.C.C. § 2-607; *Connick,* 675 N.E.2d at 589. Additionally, notice must be made in good faith. *See Maldonado,* 694 N.E.2d at 1026; U.C.C. § 2-607 cmt. 4,5. If Oettle's notice is insufficient under Illinois law, it also fails under federal law, because the Magnuson–Moss Warranty Act incorporates state-law notice requirements. *See, e.g., Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 864 (Ill. App. Ct. 1997) (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1012 (D.C. Cir. 1986)) ("Magnuson–Moss incorporates the relevant state law on UCC notice").

Typically, reasonableness is a question of fact that depends on the circumstances of each case. *Malawy v. Richards Mfg. Co.*, 501 N.E.2d 376, 384 (Ill. App. Ct. 1986) ("An evaluation of whether the notice requirement has been complied with must be based upon the factual setting of each case and the circumstances of the parties involved."). The question becomes one of law, however, "[w]hen no inference can be drawn from the evidence other than that the notification was unreasonable." *Maldonado*, 694 N.E.2d at 1026.

The lapse of time between when Oettle knew of the alleged defect to when she gave notice is 21 months and 27 days (calculating from the date of first purchase, March 31, 2018, to the date of Oettle's notification letter, January 27, 2020). Defendants contend

a delay of nearly 22 months is unreasonable as a matter of law. *See, e.g.*, *Branden v. Gerbie*, 379 N.E.2d 7, 9 (Ill. App. Ct. 1978) ("In view of the record before us ... only one inference can be drawn that is, that the delay of 15 months in giving notice was not, as a matter of law, within a reasonable time after plaintiff should have discovered the breach."). However, Illinois courts have held that delays are not unreasonable as a matter of law where there is no prejudice to the seller. *See Maldonado*, 694 N.E.2d at 1026 ("When delay in notification does not result in prejudice to the defendant, it is not generally viewed as unreasonable"); *Id.* (where there is no evidence of bad faith or prejudice, an 11- month delay is "not necessarily unreasonable," and dismissal premised on untimely notice was premature); *Goldstein v. G.D. Searle & Co.*, 378 N.E.2d 1083, 1088 (Ill. App. Ct. 1978) ("the timeliness of a notice which does not result in prejudice to the defendant has not been viewed as unreasonable").

At this stage of the litigation, the Court cannot discern whether, given the circumstances, Defendants suffered prejudice by the delay. As such, whether Oettle's pre-suit notice was legally sufficient is debatable, and the adequacy of her notice cannot provide a basis for dismissal at this stage of the litigation. *See e.g.*, *Datil v. C.R. Bard, Inc.*, 2020 WL 5810402, at *6 (N.D. Ill. Sept. 30, 2020) (15-month delay in notifying defendant not unreasonable as a matter of law where record was devoid of evidence demonstrating prejudice).

Accordingly, Defendants' motion to dismiss Counts I and II is **DENIED**.

**C      Illinois Consumer Fraud Act Claim (Count III)**

    **1.      Statute of Limitations**

Defendants contend that Oettle's ICFA claim is time-barred. "While complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (internal citation and quotation omitted). The statute of limitations for an ICFA action is three years and begins to run when the cause of action accrues. 815 ILCS 505/10a(e).

Assuming Oettle's cause of action accrued on July 24, 2018, the last time she purchased a BT Kit, her claim would have expired on July 24, 2021. Accordingly, Defendants argue, Oettle's First Amended Complaint, filed on January 18, 2022, is time-barred because it does not relate back to the filing date of her original complaint.[1]

In response, Oettle points to email correspondence from Defendants' counsel that purportedly demonstrates Defendants agreed to toll the statute of limitations on her claims. Defendants dispute Oettle's interpretation of the referenced correspondence and attach additional correspondence in support of their position. The parties' arguments regarding waiver raise a fact issue precluding dismissal at this stage.

Accordingly, the motion to dismiss the ICFA claim as time-barred is **DENIED**.

   **2.   Deceptive Conduct**

To bring an ICFA claim, Oettle must allege conduct that plausibly could deceive a reasonable consumer. *See Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1031 (Ill. App. Ct. 2014). "[A] statement is deceptive if it creates a likelihood of deception or has the capacity to

---

[1] Plaintiff moved for leave to amend her Complaint on July 28, 2021 (Doc. 47).

deceive." *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001). The deceptive act "must be looked upon in light of the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). This standard requires a "practical and fact-intensive approach to consumer behavior." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th Cir. 2020). Thus, how reasonable consumers would interpret a label is typically a question of fact that should not be decided on the pleadings. *See id.* at 483. But "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001)).

A court may find a statement is not misleading as a matter of law where plaintiff's claims are "fanciful interpretations of labels or other advertising." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 477 (7th Cir. 2020) (collecting cases). *See also Id.* at 493 ("It's well settled that a label is not deceptive as a matter of law when the plaintiff's interpretation is so facially illogical, implausible, or fanciful that no reasonable consumer would think it—and that dismissal is warranted in those circumstances.").

In the instant case, Oettle contends that the statement "Made in the USA with global components," accompanied by a depiction of the American flag is deceptive because the balloons included in the BT Kit were made in Malaysia. Defendants contend that there is no deception because the statement is not false – the product is made in the USA and contains components sourced from other parts of the globe. According to Defendants, a statement or label cannot be misleading unless it actually conveys untrue

8

information about the product. In support of this contention, Defendants cite to *Stemm v. Tootsie Roll Indus.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. Mar. 19, 2019) and *Fuchs v. Menard, Inc.*, 2017 WL 4339821 (N.D. Ill. Sept. 29, 2017).

Defendants further note that the Federal Trade Commission ("FTC"), the agency that regulates U.S. origin product labels, permits qualified U.S. origin product labels such as the one at issue in the instant case. Specifically, the agency has instructed as follows as to qualified claims about the U.S. content of a product:

> [a] marketer may make any qualified claim about the U.S. content of its products as long as the claim is truthful and substantiated. Qualified claims, for example, may be general, indicating simply the existence of unspecified foreign content (e.g., "made in USA of U.S. and imported parts") or they may be specific, indicating the amount of U.S. content (e.g., "60% U.S. content"), the parts or materials that are imported (e.g., "made in USA from imported leather"), or the particular foreign country from which the parts come ("Made in USA from French components").

FTC, Enforcement Policy Statement on U.S. Origin ("Policy Statement"), *available at* https://www.ftc.gov/public-statements/1997/12/enforcement-policy-statement-us-origin-claims.

Oettle contends that, unlike qualified claims referencing *imported* components or components from a specific foreign country, the qualified claim at issue in the instant case is deceptive because "global" means "the entire world," "worldwide," and/or "all countries; all peoples." Therefore, Oettle argues, the fact that Malaysia is a place on the globe does not demonstrate that the subject label is not deceptive. Specifically, Oettle states as follows:

> Malaysia might be a place on the globe, but it does not involve the *entire world*. It is not "all countries; all peoples." The United States is also a place

9

> on the globe, as is the Vatican, of which [Plaintiff] asks this Court to take judicial notice of.

(Doc. 73, p. 9). Oettle also contends that "'[t]his is probably why" the FTC Policy Statement references "imported" components or components from a specified country and does not expressly endorse use of the term "global."

As an initial matter, the Court agrees that the product's label, "Made in the USA with global components," is truthful and substantiated. The label tells the consumer that the product is made in the United States, but makes no promise about the source of the product's component parts. The U.S. origin qualification, "with global components," indicates that, although *made* in the United States, the component parts could be sourced from any country in the world. Thus, the fact that a component of the product, the balloons, are sourced from Malaysia does not render the label false.

However, Defendants' argument that "a statement or label cannot mislead unless it actually conveys untrue information about a product" is mistaken.[2] Under limited

---

[2] The Court acknowledges that, on at least three occasions, district courts in this Circuit have made this exact statement. *See Floyd v. Pepperidge Farm, Inc.*, 2022 WL 203071, at *4 (S.D. Ill. Jan. 24, 2022); *Alleman v. Collection Pros., Inc.*, 2019 WL 5576872, at *6 (N.D. Ill. Oct. 29, 2019); *Stemm v. Tootsie Roll Indus., Inc.*, 374 F. Supp. 3d 734, 740 (N.D. Ill. March 19, 2019). These cases appear to be relying on the Seventh Circuit's decision in *Bober v. Glaxo Wellcome* PLC, 246 F.3d 934, 938 (7th Cir. 2001). In *Bober*, the Seventh Circuit concluded that the allegedly deceptive statement was not misleading as a matter of law. In so holding, the Appellate Court noted that the subject statement was "completely true." The Seventh Circuit, however, did not go so far as to say that a true statement can *never* be misleading. In fact, the Seventh Circuit has explained that, in some circumstances, true statements can be misleading. *See e.g., Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020); *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992). In support of the contention that a true statement can never be misleading, Oettle also cites to *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *4 (N.D. Ill. Sept. 29, 2017). In *Fuchs*, the fact that the disputed label was literally true was a significant factor in concluding that it was not deceptive under ICFA. However, the Court did not go so far as to say a literally true label can never be deceptive under

circumstances, representations that are literally true have been found to be potentially misleading under ICFA. A true statement may be misleading, for instance, where it does not disclose information which materially qualifies the statement. *See St. Joseph Hosp. v. Corbetta Constr. Co.*, 316 N.E.2d 51, 71 (Ill. App. Ct. 1974) (stating that a building panel was "not flame rated" was misleading when the rating organization declined to assign a rating because it was so combustible it could not be safely used in construction); *Kleczek v. Jorgensen*, 767 N.E.2d 913, 920 (Ill. App. Ct. 2002) (finding that a contractual representation that no "notice" of code violations had been issued, although true, was nevertheless misleading when an oral warning of code violations, but not a written notice, had issued). *See also, Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) ("A label is deceptive if it is likely to mislead a reasonable consumer in a material respect, even if it is not literally false.").

That being said, the few cases which have found a true statement to be actionable under ICFA typically involve a facially obvious omission or deception as to a material fact. That is not present here. Although not entirely clear, Oettle appears to contend that, even if true, the statement "Made in the USA with global components" is still misleading because "global" refers to the entire world (every country, every person…), and the disputed part was sourced in Malaysia. Oettle's argument is facially illogical and is the

---

ICFA. Rather, in reaching its decision, the district court held that the disputed label was not deceptive as a matter of law because (1) the label was literally true; (2) the federal agency in charge of assisting entities develop industry standards endorsed the label; and (3) consumers in the plaintiff's position had access to information that would dispel any possible ambiguities. Considering these factors, the court concluded that no reasonable consumer would be misled by the subject label.

kind of "fanciful interpretation" that warrants dismissal. *Bell*, 982 F.3d at 477 (7th Cir. 2020). No reasonable consumer would conclude that the qualifier "with global components" means a product includes parts from every country in the world.

Further, such an interpretation does not support the contention that is the basis of Oettle's consumer fraud claim – that the label caused her to believe the BT Kits were made in the United States using only parts and materials sourced from the United States. The product's label does not promise that its component parts originate in the United States. It expressly states that its component parts are globally sourced. The product's label is accurate, and nothing in the label (or missing from the label) would lead a reasonable consumer to conclude that the qualifier "with global components" indicates that 100% of the product's parts originated in the United States.

Finally, Oettle attaches significance to the fact that the FTC did not use the word "global" as an example of how to appropriately qualify U.S. origin claims. Oettle seems to contend that this indicates the FTC concluded the word is misleading. The FTC, however, has issued guidance indicating that "global" can be used to qualify U.S. origin claims. Specifically, in 2018 the FTC concluded that a company satisfactorily addressed the agency's concerns about deceptive advertising material by "replacing unqualified 'Built in USA' claims with 'Built in the USA of Global Components' across all marketing materials and product packaging." Closing letter to Robert Provost, CEO, Prodeco Technologies, LLC (Feb. 7, 2018) available at https://www.ftc.gov/system/files/documents/closing_letters/nid/musa_prodeco_technologies_llc.pdf.

12

For these reasons, the Court concludes that, as a matter of law, no reasonable consumer would be misled by the "Made in the USA with global components." Because the Court has concluded that the label in question was not capable of misleading a reasonable consumer, the Court need not decide whether Oettle has sufficiently alleged that she suffered actual damages under ICFA.

## IV.  CONCLUSION

For these reasons, Defendants' motion to dismiss (Doc. 71) is **GRANTED in part and DENIED in part**. Oettle's claim for Revocation of Acceptance (Count IV) is **DISMISSED** with prejudice. Oettle's claim under the Illinois Consumer Fraud Act (Count III) is **DISMISSED** with prejudice. As this is the only claim directed against Worthington Cylinder Corporation, it is **DISMISSED** from the action. The Clerk of Court is **DIRECTED** to **TERMINATE** Worthington Cylinder Corporation as a party in CM/ECF. Oettle may proceed with her Breach of Implied Warranty of Merchantability claim (Count I) and her Magnuson Moss Warranty Act claim (Count II) against Walmart Inc.

The previously imposed stay (Doc. 77) is **LIFTED**. Oettle's Motion for Class Certification is **DENIED** without prejudice. Oettle is granted leave to file a new motion for class certification, consistent with the Court's ruling herein, on or before September 15, 2022. A status conference will be set by separate order.

**SO ORDERED.**

Dated: August 22, 2022

DAVID W. DUGAN
United States District Judge