IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TRISTA OETTLE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. 3:20-cv-455-DWD ) |
| WALMART, INC., | ) ) |
| Defendant. | ) ) |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

In 2018, Plaintiff Trista Oettle ("Oettle") purchased a total of four Balloon Time helium tank kits ("Kits") from Walmart Inc ("Walmart") on three separate occasions (March 31, 2018, May 26, 2018, and July 24, 2018).[1] She purchased the kits to inflate balloons for her children's birthday parties and claims they failed to keep balloons afloat for a "sufficiently long period of time." The Court granted in part and denied in part Walmart's motion to dismiss. Specifically, this Court denied Walmart's motion to dismiss Counts I and II because a factual issue existed regarding the reasonableness of any delay in giving pre-suit notice. (Doc. 82) Discovery ensued, and Walmart now moves for summary judgment on Oettle's remaining claims for Breach of Implied Warranty of Merchantability (Count I) and Breach of the Magnuson-Moss Warranty Act (Count II) (Doc. 90). Walmart contends that it is entitled to summary judgment as to both claims

---

[1] Oettle, on behalf of a putative class of plaintiffs, filed suit in state court on February 26, 2020. Walmart removed the case to this Court, asserting jurisdiction under the Class Action Fairness Act ("CAFA").

because Oettle failed to provide timely pre-suit notice. Oettle opposes the Motion (Doc. 91), and Walmart has filed a reply in support of its Motion (Doc. 92). For the reasons set forth below, the Motion is **GRANTED**.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of triable fact exists only if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City Of Attica, Indiana*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Defendant, as the movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex Corp.*, 477 U.S. at 323). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 323. The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

A party will successfully oppose summary judgment only if it presents, "definite, competent evidence to rebut the motion." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). In reviewing the record, disputed facts are viewed in a light most

favorable to the nonmoving party; however, this treatment does not extend to inferences supported by only speculation or conjecture. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017); *Coleman v. City of Peoria, Ill.*, 925 F.3d 336, 345 (7th Cir. 2019). *See also Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (during summary judgment, a court accepts the nonmoving party's version of any disputed fact only if supported by relevant, admissible evidence.).

## II.  UNDISPUTED FACTS

The following facts are undisputed unless otherwise stated. Oettle purchased four Kits from the Walmart in Carlyle, Illinois on three separate occasions in 2018 to inflate balloons for her children's birthday parties. (Doc. 90, 23:18-23, 25:18-24; 26:8-11). She purchased Kits on March 31, 2018, May 26, 2018, and July 24, 2018 (Doc. 90, 31:13-20). The Kits Oettle purchased represented on the box that the inflated balloons would have a "float time" of "5-7 hours." (Doc. 90, 78:17-24). Oettle used each Kit on the day of purchase. According to Oettle, all four of the Kits performed the same way with no balloons staying afloat more than two hours. (Doc. 90, 24:4-14).

On March 31, 2018, the first time Oettle purchased a Kit, she inflated about half of the thirty included balloons at her daughter's outdoor birthday party. (Doc. 90, 34:19-35:2, 38:7-18). Oettle testified that about two hours into the party, the balloons were half floating and "most – some" were not floating at all. (Doc. 90, 40:16-41:1). At that time, the balloons started to "droop", half float, and others were on the ground. (Doc. 90, 42:13-16, 43:2-6). Plaintiff conceded that, at the end of the first party, she knew the Kit failed to perform as pledged on the labeling and Walmart breached its promise to deliver a

3

suitable balloon kit. (Doc. 90, 44:1-45:15). Oettle, however, did not attempt to obtain a refund from Walmart or communicate her dissatisfaction to Walmart. (Doc. 90, 45:18-46:6). She did not do so because she "chalked it up a loss" and was too busy. (Doc. 90, 46:7-9, 47:7-17).

On May 26, 2018, Oettle returned to Walmart and purchased two more Kits for the birthday celebration of her twin children. (Doc. 90, 48:8-18, 49:2-12, 50:11-16). She decided to give the Kit another try, thinking perhaps the first negative experience was due to cold weather or her own fault. (Doc. 90, 50:17-51:6). This time, although some of the balloons might have stayed afloat more than two hours, by the end of the party (which lasted four to five hours), 50% of the balloons were on the floor and the remainder had lost buoyancy. (Doc. 90, 53:10-18, 54:6-8, 55:1-24). Oettle considered requesting a refund but did not do so because she was "busy." (Doc. 90, 58:17-59:2).

Oettle purchased a fourth Kit for another birthday party on July 24, 2018. (Doc. 90, 61:22-62:7, 63:3-6). As with her prior experiences, Oettle observed that balloons lost buoyancy, and some were on the floor around two hours after inflation. (Doc. 90, 64:11-20). At the end of this birthday party, Oettle, once again, believed that the Kit had not performed as represented and that Walmart had failed to deliver on its end of the bargain. (Doc. 90, 65:20-66:6). Oettle, however, did not attempt to return the product because she had depleted the contents of the Kit. (Doc. 90, 67:1-15).

Oettle claims that, on January 27, 2020 – 21 months and 27 days after her first Kit purchase – she and her husband wrote a letter to Walmart, attempting to obtain a refund. (Doc. 90, 46:15-47:2, 70:24-71:12; *see also* Doc. 90 p. 101). Oettle says she mailed the letter

to Walmart, but she is not sure where she mailed the letter. She testified that she "probably" mailed the letter to the Walmart in Carlyle, Illinois. (Doc. 90, 75:4-15). The letter did not provide any information for Walmart to be able to contact Oettle or for use in identifying the transaction or transactions in issue, referring only to "this balloon time helium tank you sold me about two years ago." (Doc. 90, p. 101). The letter is signed, but the signature is illegible. (Doc. 90, p. 101).

Oettle has presented no evidence showing the letter was actually mailed, the address to which it was mailed, or that it was in fact delivered. The Walmart store in Carlyle has no record of ever having received the letter, and the Walmart Contact Center (the team within Walmart that receives and resolves inquiries and concerns from customers) has no record of ever having received the letter. (Doc. 90-2, Doc. 90-4).

Plaintiff has disposed of two of the four helium tanks she purchased and of the balloons. (Doc. 90, 49:2-12, 36:19-37:12, 57:15-22, The two remaining helium tanks are sitting on her porch.

### III. ANALYSIS

Under Illinois law, a buyer who discovers a breach of warranty must notify the seller "or be barred from any remedy." 810 ILCS 5/2-607(3)(a). The requirement of pre-suit notice is supported by several justifications: to protect a seller's ability to investigate a breach and gather evidence, to allow a seller to cure the defect and/or minimize damages, and to encourage pre-suit settlement. *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996); *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1025 (Ill. App. Ct. 1998); U.C.C. § 2–607 cmt. 4; *In re McDonald's French Fries*

5

*Litigation*, 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007). Notice must be made "within a reasonable time after [the buyer] discovers or should have discovered any breach." U.C.C. § 2-607; *Connick*, 675 N.E.2d at 589. Further, as the Illinois Supreme Court has explained, "it is essential that the seller be notified that *this particular transaction* is troublesome and must be watched." *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 493 (1996) (emphasis in original). Thus, "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2–607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." *Id. See also Id.* ("As Judge Learned Hand stated regarding section 2-607's predecessor: 'The notice of the breach required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *buyer's claim* that they constitute a breach.' ") (quoting *Am. Mfg. Co. v. United States Shipping Bd. Emergency Fleet Corp.*, 7 F.2d 565, 566 (2d Cir. 1925)).

In the instant case, Walmart contends that it is entitled to summary judgment because (1) Walmart never received Oettle's letter; (2) even if Walmart did receive Oettle's letter, the notice was insufficient because it failed to identify a particular transaction; and/or (3) even if Walmart did receive Oettle's letter, the letter was not provided within a reasonable time. Oettle contends that whether she sent, and Walmart received, her letter is a disputed fact that must be viewed in a light most favorable to her. The Court agrees. Nonetheless, even assuming Walmart received Oettle's letter, her breach of warranty claim fails as a matter of law.

First, Oettle's letter fails to identify a particular transaction. The letter vaguely

describes the unidentified buyer's expectation that when "you buy helium to inflate a balloon that it would inflate a balloon for more than a few hours." (Doc. 90, p. 101). The letter goes on to reference "this balloon time helium tank you sold me about two years ago." The letter does not include any information that would have allowed Walmart to identify a particular transaction involving the purchase of a balloon time helium kit by a particular buyer.[2] At most, the letter identifies a problem with the balloon time helium tank line of products. However, as the Illinois Supreme Court has explained, "even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2–607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." The purpose of the pre-suit notice requirement is to give sellers the meaningful opportunity to investigate and resolve breaches short of litigation. That purpose is not fulfilled by a nondescript letter from an unidentified source complaining of an unidentified problem with a product. Because Oettle's letter failed to identify a problem with a particular product purchased by a particular buyer, it did not give Walmart the opportunity to investigate and resolve Oettle's problem before litigation ensued. As such, Oettle's letter did not amount to sufficient pre-suit notice as a matter of law.

Second, given the circumstances of this case, the lapse of time between when Oettle knew of the alleged defect to when she gave notice – 21 months and 27 days - is unreasonable as a matter of law. Typically, reasonableness is a question of fact that

---

[2] The letter is signed but the signature is illegible. The letter does not include a return address or otherwise identify the sender/buyer or the transaction(s) in issue.

depends on the circumstances of each case. *Malawy v. Richards Mfg. Co.*, 501 N.E.2d 376, 384 (Ill. App. Ct. 1986) ("An evaluation of whether the notice requirement has been complied with must be based upon the factual setting of each case and the circumstances of the parties involved."). The question becomes one of law, however, "[w]hen no inference can be drawn from the evidence other than that the notification was unreasonable." *Maldonado*, 694 N.E.2d at 1026.

In the instant case, Walmart was denied the opportunity to examine and/or test the products in issue – Oettle disposed of the allegedly defective balloons and two of the four tanks; the remaining tanks have been stored on her porch. Walmart was also deprived of the opportunity to timely interview witnesses who attended the birthday parties where the products allegedly underperformed, and the opportunity to minimize damages or correct the alleged defect prior to litigation. Moreover, the delay affected Walmart's ability to investigate whether they wanted to discontinue selling the Kits, which could have significantly reduced the size of the proposed class. Because the delay in notification prejudiced Walmart in these ways, it is unreasonable as a matter of law. *See, e.g.*, *Hebron v. American Isuzu Motors, Inc.* (two-year delay in giving notice, coupled with plaintiff's disposal of critical evidence, unreasonable as a matter of law); *Branden v. Gerbie*, 379 N.E.2d 7, 9 (Ill. App. Ct. 1978) ("In view of the record before us ... only one inference can be drawn that is, that the delay of 15 months in giving notice was not, as a matter of law, within a reasonable time after plaintiff should have discovered the breach.").

For these reasons, Walmart's Motion for Summary Judgment as to Oettle's claim

for Breach of Implied Warranty of Merchantability is **GRANTED**. Further, because the Magnuson-Moss Warranty Act incorporates state-law notice requirements, Oettle's Magnuson-Moss Warranty Act claim fails as well. *See, e.g., Perona v. Volkswagen of Am., Inc.*, 684 N.E.2d 859, 864 (Ill. App. Ct. 1997) (citing *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1012 (D.C. Cir. 1986)) ("Magnuson–Moss incorporates the relevant state law on UCC notice").

## IV.  CONCLUSION

Walmart's Motion for Summary Judgment (Doc. 90) is **GRANTED**. Oettle's Breach of Implied Warranty of Merchantability claim (Count I) and Magnuson Moss Warranty Act claim (Count II) are dismissed with prejudice. Oettle's Motion for Class Certification (Doc. 86) is **DENIED** as **MOOT**. This **ORDER** disposes of the entire action. Accordingly, the Clerk of Court is **DIRECTED** to close this case and to enter judgment accordingly.

**SO ORDERED.**

Dated: August 2, 2023

DAVID W. DUGAN
United States District Judge